UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


THELONIUS PRINCE,

                 Petitioner,

vs.                                    Case No. 3:18-cv-269-J-39PDB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

                 Respondents.

_____


**ORDER**

**I.  INTRODUCTION**

This cause is before the Court on Petitioner Thelonius

Prince's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus

By a Person in State Custody (Petition) (Doc. 1).  He filed the

Petition on January 22, 2018, pursuant to the mailbox rule, and

challenges his state court (Duval County) conviction for

conspiracy to traffic in heroin and conspiracy to traffic in

cocaine.  Id. at 1.  In ground one, he raises numerous claims of

ineffective assistance of trial counsel.  Id. at 24-42.  In his

second ground, he raises a claim of insufficiency of the evidence,

resulting in manifest injustice in violation of due process of

law.  Id. at 42-51.  Finally, in his third ground, he claims

"judicial misconduct" due to the trial court's failure to follow

the rules of court concerning the process of authentication of evidence.  Id. at 51-53.  In response to the Petition, Respondents filed a Motion to Dismiss (Response) (Doc. 18).[1]  Petitioner filed a Response to Respondents' Motion to Dismiss (Reply) (Doc. 20).[2] See Order (Doc. 4).

## II.  EVIDENTIARY HEARING

A petitioner carries the burden to establish a need for an evidentiary hearing.  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012).  In this case, the Court can "adequately assess [Petitioner's] claims without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Petitioner has not carried his burden and is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

---

[1] The Court hereinafter refers to the Exhibits (Docs. 18 & 19) as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the document will be referenced.

[2] With respect to the Petition, Response, and Reply, the Court will reference the page numbers assigned by the electronic filing system.

# III.  TIMELINESS

Pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA), there is a one-year period of limitation:

>   (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

>>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>>   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

>   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Respondents contend Petitioner has failed to comply with the limitation period described above, and Petitioner acknowledges his Petition is untimely. Response at 4-6; Petition at 6-20; Reply at 1-7. Petitioner, however, claims there were extraordinary circumstances justifying equitable tolling of the limitation period. Petition at 6-20; Reply at 1-7. Respondents assert Petitioner is not entitled to the extraordinary remedy of equitable tolling. Response at 6-8. Petitioner argues he faced extraordinary circumstances, acted diligently in pursuit of his rights, but his post-conviction counsel abandoned him and failed to timely file a federal petition. Reply at 1-7. He asks that the Response be stricken as unsupported by record or law.[3] Id. at 7.

The Petition is untimely filed. After conviction, Petitioner appealed to the First District Court of Appeal (1st DCA).[4] Ex. K. On April 3, 2007, the 1st DCA affirmed per curiam. Ex. M. The mandate issued May 1, 2007. Id. The conviction became final on Monday, July 2, 2007 (90 days after April 3, 2007) (According to

---

3 The Court denies Petitioner's request to strike the Response as Respondents have not presented an insufficient defense or presented redundant, immaterial, impertinent, or scandalous matter in their Response. Rule 12(f), Fed. R. Civ. P.

4 Petitioner's appellate counsel filed an Anders[v. California, 386 U.S. 738 (1967)] brief. Ex. K.

rules of the Supreme Court, a petition for certiorari must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion."). The limitation period began to run on Tuesday, July 3, 2007, and ran until the period expired on Wednesday, July 2, 2008.

Through counsel, Petitioner filed a Rule 3.850 motion for post-conviction relief on March 31, 2009, long after the one-year limitation period had passed. Ex. N at 1-10. Thus, this Rule 3.850 motion did not serve to toll the limitation period under AEDPA. See Tinker v. Moore, 255 F.3d 1331, 1334-35 (11th Cir. 2001) (holding that, even though Florida law allows a prisoner two years to file a Rule 3.850 motion, the prisoner must file the motion within one year after his conviction becomes final in order to toll the one-year limitation period), cert. denied, 534 U.S. 1144 (2002); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state court petitions must be 'pending' in order to toll the limitations period. A state court petition like [Petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), cert. denied, 531 U.S. 991 (2000).

Based on the history outlined above, the federal Petition filed in 2018 is untimely and due to be dismissed unless Petitioner can establish equitable tolling of the statute of limitations is warranted. Damren v. Fla., 776 F.3d 816, 821 (11th Cir. 2015) (per curiam), cert. denied, 137 S. Ct. 830 (2017). In order to be entitled to equitable tolling a petitioner is required to demonstrate two criteria: (1) the diligent pursuit of his rights and (2) some extraordinary circumstance that stood in his way and that prevented timely filing. Agnew v. Fla., No. 16-14451-CIV, 2017 WL 962489, at *5 (S.D. Fla. Feb. 1, 2017), report and recommendation adopted by 2017 WL 962486 (S.D. Fla. Feb. 22, 2017). Equitable tolling is an extraordinary remedy, employed in "rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017) (quotations and citation omitted), cert. denied, 138 S. Ct. 1042 (2018).

As such, a petitioner must make a showing of extraordinary circumstances that "are both beyond his control and unavoidable even with diligence," a hurdle not easily surmounted. Howell v. Crosby, 415 F.3d 1250, 1251 (11th Cir. 2005) (quotations and citation omitted), cert. denied, 546 U.S. 1108 (2006). The petitioner carries the burden of persuasion, and, in this instance, Petitioner has not met this high hurdle. Indeed, he has not pled

"enough facts that, if true, would justify an evidentiary hearing on the issue." Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1209 (11th Cir. 2014) (quoting Hutchinson v. Fla., 677 F.3d 1097, 1099 (11th Cir. 2012)), cert. denied, 135 S. Ct. 1171 (2015).

Upon review, Petitioner has not presented any justifiable reason why the dictates of the one-year limitation period should not be imposed upon him. Petitioner admits, early on, he knew there was a one-year limitation period. Petition at 6-7. He states that after his conviction was affirmed on direct appeal, he began to search for counsel to represent him in filing a Rule 3.850 motion, and that prison law clerks told him it was vital to find an attorney who had experience and understood the importance of preserving federal habeas time. Id. at 7. Thus, as early as July 2, 2007, when Petitioner's conviction became final, Petitioner was aware that the clock was running. Petitioner contacted William Tunkey, Esquire, to represent Petitioner in filing a Rule 3.850 motion. Id. Petitioner knew that a Rule 3.850 motion needed to be filed as soon as possible to prevent the one-year limitation period from expiring. Id. On November 15, 2007, Petitioner and his counsel discussed preserving the one-year limitation period through the filing of the state post-conviction motion. Id. at 8.

The record demonstrates Petitioner wrote Mr. Tunkey on January 18, 2008, providing counsel with a list of "Ineffective

Issues & Supporting Cites." (Doc. 1-1 at 3-6). After a month passed without hearing from counsel, Petitioner wrote Mr. Tunkey on February 28, 2008, reminding counsel of the need to preserve federal time. Id. at 9. In the letter, Petitioner noted Mr. Tunkey had assured Petitioner there was plenty of time in which to preserve the federal time. Id. Petitioner states, on March 24, 2008, he had a conference call with Mr. Tunkey, and they discussed the filing of the Rule 3.850 motion and the preservation of the federal time. Petition at 9. In a March 24, 2008 letter, Petitioner asked counsel to provide the 1st DCA opinion and mandate dates. (Doc. 1-1 at 27).

Thereafter, Mr. Tunkey told Petitioner he was not going to address the issues Petitioner suggested for the Rule 3.850 motion. Petition at 9. Based on a serious disagreement over issues that should be raised in the post-conviction motion, Mr. Tunkey decided to return the record to Petitioner. Id. On March 25, 2008, Mr. Tunkey wrote Petitioner: "I found absolutely nothing remarkably wrong with the conduct of your trial and certainly found no error of any constitutional scope that I believe would rise to the level needed to have any chance of setting aside your judgment and conviction." (Doc. 1-1 at 10). Mr. Tunkey pointed out that Petitioner refused to head counsel's advice that the only potentially viable claim may be that trial counsel failed to

diligently attempt to obtain a negotiated resolution through a plea bargain. <u>Id</u>. Mr. Tunkey repeated, "I see nothing else in the record of your pre-trial and trial proceedings which could plausibly support a Rule 3.850 motion."[5] <u>Id</u>. at 11. Mr. Tunkey returned Petitioner's entire file. <u>Id</u>.

Apparently, after speaking to family members, Petitioner changed his mind and decided to accept counsel's advice and let counsel determine the grounds to be raised in the Rule 3.850 motion. (Doc. 1-1 at 12). Petitioner wrote counsel on April 4, 2008 and advised Mr. Tunkey that Petitioner was willing to allow counsel to proceed in a manner he thought best. <u>Id</u>. at 12. Thereafter, on April 14, 2008, Mr. Tunkey wrote Petitioner and asked him to return the file. <u>Id</u>. at 20.

Petitioner waited until after the one-year period ran out to write a follow-up letter to counsel on July 10, 2008 (provided to the institution on July 15, 2008). <u>Id</u>. at 21. He said, "so I sit and wait as <u>Federal Habeas</u> time expires." <u>Id</u>. Mr. Tunkey, after noting he did not receive Petitioner's letter until the end of July, responded on August 4, 2008, stating he was working on the Rule 3.850 motion. <u>Id</u>. at 25.

---

5 Notably, appellate counsel also found no viable grounds to raise to challenge the conviction. Ex. K.

Apparently, another rift developed between Petitioner and his counsel, and on March 10, 2009, Mr. Tunkey wrote Petitioner and said he had already sent Petitioner a draft of the Rule 3.850 motion. Id. at 28. Counsel said, although he felt no obligation to provide Petitioner with a template for filing a Rule 3.850 motion, given their vast differences of opinion regarding the manner in which the pre-trial and trial were handled, Mr. Tunkey decided to "gratuitously help you get steered in the only direction which I see as a possible avenue" of attack. Id. at 28. Mr. Tunkey, after acknowledging the overwhelming evidence mounted against Petitioner, believed there was only one possible claim to be raised post-conviction: trial counsel's failure to provide a meaningful discussion of the plea offer. Id. at 28-29. Again, Mr. Tunkey returned Petitioner's documents to him and advised Petitioner to file his Rule 3.850 motion no later than April 2, 2009. Id. at 29.

In a March 15, 2009 letter, turned over to the prison authorities on March 18, 2009 for mailing, Petitioner complained that counsel neglected to preserve Petitioner's federal time and Petitioner was distressed to find he was being asked to file his Rule 3.850 motion pro se towards the end of the state limitation period. Id. at 30. Apparently, Petitioner and his counsel came to terms, and Mr. Tunkey filed a timely state Motion to Vacate and

Set Aside Judgment and Sentence (F.R.CR.P. 3.850) [sic]; Request for Evidentiary Hearing on March 31, 2009. Ex. N at 1-10. The trial court, on December 9, 2009, denied the motion. Id. at 11-24. Petitioner appealed. Ex. N at 25; Ex. O; Ex. P. On May 5, 2010, the 1st DCA per curiam affirmed. Ex. Q. Petitioner moved for rehearing and clarification. Ex. R. The 1st DCA denied the motion. Id. The mandate issued. Ex. S. The 1st DCA denied a petition for writ of certiorari on April 27, 2011. Ex. T; Ex. U; Ex. V; Ex. W. The mandate issued on July 6, 2011. Ex. Y.

Petitioner has failed to show an extraordinary circumstance, and he has not met the burden of showing equitable tolling is warranted. The record demonstrates he had ample time to exhaust state remedies and prepare and file a federal petition. The Court is not persuaded Petitioner acted diligently. Legal precedence teaches equitable tolling should be used sparingly, and in this instance, Petitioner has failed to show he exercised due diligence. Further, he has not identified some extraordinary circumstance that stood in his way that prevented timely filing. Therefore, the Court finds Petitioner has not shown he is entitled to extraordinary relief. As such, equitable tolling is not warranted.

Petitioner, in his Reply, claims there was an extraordinary circumstance in his case, similar to the one in Downs v. McNeil,

11

520 F.3d 1311 (11th Cir. 2008). Reply at 1-2. Petitioner complains he was abandoned by counsel. Id. at 5. Finally, Petitioner contends Mr. Tunkey filed an untimely Rule 3.850 motion after being paid $25,000 to timely file the motion. Id. at 4-5.

Of import, the Rule 3.850 motion was not denied as untimely filed. Indeed, it was timely filed and denied on its merits by the trial court.

To be entitled to equitable tolling, Petitioner must demonstrate he was diligent in pursuit of his rights and some extraordinary circumstance stood in his way from timely filing. The extraordinary circumstance must be beyond his control and unavoidable even with diligence. There is no question that Petitioner knew there was a one-year period of limitation and he knew he needed to file the Rule 3.850 motion in a prompt fashion to toll the AEDPA limitation period. The record demonstrates Petitioner hired counsel to file a Rule 3.850, by paying $25,000. However, Petitioner and Mr. Tunkey began to have disagreements over the nature and content of the Rule 3.850 motion. Mr. Tunkey, on March 25, 2008, said he could not find any plausible constitutional grounds to attack the conviction and returned Petitioner's record. (Doc. 1-1 at 10-11). At this point, Petitioner could have simply filed a pro se Rule 3.850 motion that would have tolled the one-year limitation period. Instead,

Petitioner changed his mind about filing a bar action against Mr. Tunkey and decided to allow counsel to proceed with the filing of a post-conviction motion as he saw fit. Petition at 10.

Exacerbating the issue, Petitioner waited until after the one-year period ran out to write to counsel and complain about his inactivity. Once again, Petitioner and Mr. Tunkey disagreed over the content of the Rule 3.850 motion, and Mr. Tunkey advised Petitioner he could file a pro se Rule 3.850 using a template provided by counsel.

In sum, Petitioner was well aware of the one-year deadline for filing a federal petition. He could have filed a pro se Rule 3.850 motion to toll the limitation period once counsel informed Petitioner he found no error of constitutional dimension and returned the documents to Petitioner. Although Petitioner continued to have ongoing disputes with his counsel over the grounds to be raised in a post-conviction motion, Petitioner elected not to promptly file a pro se Rule 3.850 motion, even though he was fully aware that the one-year clock was running. The record show he did not diligently pursue his rights. Upon review, no extraordinary circumstance stood in his way from timely filing a federal petition. Moreover, he waited until after the one-year limitation period expired to write and complain to defense counsel that counsel had let the one-year period pass.

Petitioner asserts his counsel abandoned him. Reply at 5. The record does not evince abandonment. On the contrary, the record demonstrates Petitioner and his counsel had an ongoing disagreement over the content of the Rule 3.850 motion. Once this disagreement led to an impasse, Mr. Tunkey wrote Petitioner, explaining there was nothing plausibly available to support a Rule 3.850 motion, and notifying Petitioner his refusal to heed counsel's advice led counsel to return the documents to Petitioner. (Doc. 1-1 at 10-11).

Petitioner was not diligent in prosecuting his claims. Once he rejected counsel's advice, he could have filed a pro se Rule 3.850 motion to toll the limitation period. Although the limitation period was due to expire in a few months (by July 2, 2008), Petitioner spent considerable time arguing with counsel over the content of the Rule 3.850 motion, although counsel had advised Petitioner, in his assessment, the evidence against Petitioner was overwhelming and he found no error of any constitutional scope. At most, counsel believed there was one potentially viable issue, but Petitioner refused "to hear how that claim might play out." (Doc. 1-1 at 10).

Moreover, Petitioner could have filed his own pro se Rule 3.850 motion and federal petition. As evinced by his letters, Petitioner had been researching numerous claims and issues. Also,

Mr. Tunkey had provided him with the one ground that he thought may be viable on post-conviction review. Under the circumstances at bar, the Court is not persuaded that Petitioner diligently attempted to pursue his rights and timely file a federal petition. While the Court recognizes that lack of a formal education may present challenges, it does not excuse Petitioner from complying with the time constraints for filing a federal petition. <u>Moore v. Bryant</u>, No. 5:06cv150/RS/EMT, 2007 WL 788424, at *2-*3 (N.D. Fla. Feb. 12, 2007) (not reported in F.Supp.2d), <u>report and recommendation adopted by</u> the District Court on March 14, 2007.

Although Petitioner urges this Court to find that the untimely filing of the federal Petition should be contributed to circumstances beyond his control, the Court is not convinced. Petitioner could have timely filed a Rule 3.850 motion. Moreover, no extraordinary circumstances stood in his way and prevented him from timely filing his Petition. Petitioner certainly had sufficient documentation, guidance, and information to adequately pursue his state court remedies and file a timely federal petition.

Petitioner does not allege, nor does not the record show, that the state impeded Petitioner from filing a timely federal petition during the un-tolled period. No extraordinary circumstance stood in Petitioner's way. Furthermore, the Court is not persuaded that Petitioner acted diligently. As noted by

15

Respondents, Petitioner could have filed a timely federal petition to protect his interests. Response at 8.

The Court employs equitable tolling sparingly. After careful review, the Court finds Petitioner has not shown that he is entitled to extraordinary relief. Petitioner has failed to show he exercised due diligence in pursuing his state court remedies. He has also failed to show an extraordinary circumstance. Thus, he has not met the burden of showing equitable tolling is warranted.

Petitioner raises the specter of "newly discovered evidence." Petition at 14. The evidence in question is information that law enforcement utilized Stingray tracking devices to track cell phone locations without obtaining a warrant. Id. Petitioner suggests this information would have provided Petitioner with the opportunity to challenge the admission of evidence and related testimony through a motion to suppress. Id. at 20.

Although, "[a]ctual innocence may provide a gateway for a § 2254 petitioner to obtain a decision on the merits for an otherwise time-barred claim[,]" Creel v. Daniels, No. 5:16-cv-00803-LSC-JEO, 2018 WL 2187797, at *2 (N.D. Ala. Apr. 12, 2018) (not reported in F.Supp.), report and recommendation adopted by No. 5:16cv00803-LSC-JEO, 2018 WL 2184543 (N.D. Ala. May 11, 2018) (citing McQuiggin v. Perkins, 569 U.S. 383, 392 (2013)), to invoke the fundamental

16

miscarriage of justice exception to AEDPA's statute of limitations, a habeas petitioner must make a credible showing of actual innocence with new reliable evidence that was not presented at trial. See Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir.) (per curiam) (finding the alleged exception for AEDPA untimeliness requires a petitioner (1) to present "new reliable evidence . . . that was not presented at trial," . . . and (2) to show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of the new evidence) (citations omitted), cert. denied, 568 U.S. 914 (2012). A petitioner is obliged to show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." McQuiggin, 569 U.S. at 399 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995) (internal quotation marks omitted).

Therefore, in order to meet the difficult standard to overcome a bar, Petitioner must present new evidence that was not available at the time of trial, and it must be "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial." Schlup, 513 U.S. at 324. Here, Petitioner is required to persuade the Court, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

reasonable doubt. Instead of doing that, Petitioner claims evidence was improperly admitted by the trial court, and he should have been given the opportunity to challenge the evidence through a motion to suppress. This does not satisfy the Schlup standard. Thus, Petitioner may not satisfactorily invoke the actual-innocence-gateway exception.

Petitioner has failed to make a credible showing of actual innocence by failing to offer new evidence that is directly probative of his innocence. As such, the actual-innocence-gateway is not opened for Petitioner to obtain a decision on the merits of the otherwise time-barred claims. Since Petitioner has not presented new evidence establishing his actual innocence, this proves fatal to any gateway claim.

To the extent Petitioner claims his untimely filing of the federal Petition is excused because of counsel's unresponsiveness or ineffectiveness, Petition at 21-23, in reliance on the holding in Martinez v. Ryan, 566 U.S. 1 (2012), Petitioner's contention is without merit. As noted,

> The Eleventh Circuit has expressly rejected petitioner's argument that Martinez applies to overcome the statute of limitations bar. Arthur v. Thomas, 739 F.3d 611, 630 (11th Cir. 2014) (holding that "the Martinez rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's

statute of limitations or the tolling of that
period.").

<u>Sledge v. Jones</u>, No. 3:14-cv92/MCR/CJK, 2015 WL 521057, at *4 (N.D.
Fla. Feb. 9, 2015) (not reported in F.Supp.3d).

Therefore, the holding in <u>Martinez</u> is inapplicable and does
not excuse Petitioner's untimely filing of his Petition.    In
<u>Arthur v. Thomas</u>, 739 F.3d 611, 630 (11th Cir.), <u>cert. denied</u>, 574
U.S. 821 (2014), the Eleventh Circuit thoroughly explained the
limitation of the holding in <u>Martinez</u>:

> As our discussion shows, the <u>Martinez</u>
> rule explicitly relates to excusing a
> procedural default of ineffective trial
> counsel claims and does not apply to AEDPA's
> statute of limitations or the tolling of that
> period. The § 2254 ineffective trial counsel
> claims in <u>Martinez</u> and <u>Trevino</u>[6] were not
> barred by AEDPA's one year limitations period.
> Instead, those § 2254 claims were dismissed
> under the doctrine of procedural default
> because the petitioners never timely or
> properly raised them in the state courts under
> the states' procedural rules. At no point in
> <u>Martinez</u> or <u>Trevino</u> did the Supreme Court
> mention the "statute of limitations," AEDPA's
> limitations period, or tolling in any way.

Petitioner has not presented any justifiable reason why the
dictates of the one-year imitation period should not be imposed
upon him.   He has failed to demonstrate he is entitled to equitable
tolling and to make a credible showing of actual innocence by

---

[6] <u>Trevino v. Thaler</u>, 569 U.S. 413 (2013).

offering new evidence that is directly probative of his innocence. Therefore, the Court will dismiss the Petition and the case with prejudice pursuant to 28 U.S.C. § 2244(d).

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) and the case are **DISMISSED with prejudice.**

2.     The **Clerk** shall enter judgment dismissing the Petition with prejudice and dismissing the case with prejudice.

3.     The **Clerk** shall close the case.

4.     If Petitioner appeals the dismissal of the Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability.** [7]     Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of March, 2019.

_____
BRIAN J. DAVIS
United States District Judge

sa 3/12
c:
Thelonius Prince
Counsel of Record